United States District Court
Southern District of Texas
**ENTERED**
March 31, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BEAU KELLEY, Individually and on Behalf of All Others Similarly Situated, | § § § § | |
| Plaintiff. | § § | |
| VS. | § § | CIVIL ACTION NO. 4:19–CV–01152 |
| ALPINE SITE SERVICES, INC. | § § § | |
| Defendant. | § § | |

**MEMORANDUM OPINION AND ORDER**

Pending before me in this Fair Labor Standards Act ("FLSA") case is Plaintiff's Opposed Motion for Class Certification and Expedited Discovery.[1] *See* Dkt. 17. Having reviewed the motion, response, reply, supporting declarations, and applicable law, I find that the motion should be granted.

**BACKGROUND**

Plaintiff Beau Kelley ("Kelley") worked as a welder from May 2015 through September 2017 for Defendant Alpine Site Services, Inc. ("Alpine"). Alpine is a transportation and logistics company that provides engineered screwpiles for commercial construction projects.

Kelley alleges that he and his fellow co-workers were paid on an hourly basis and typically worked in excess of 40 hours per week. He says that Alpine did not pay its employees one and one-half times their rate of pay for the hours they worked over 40 in a

---

[1] Although the title of the motion references a request for "expedited discovery," there is no such request in the briefing submitted to me.

workweek. Instead, Kelly contends that Alpine paid its employees straight time for overtime—that is, a normal hourly rate for all hours worked.

Kelley brings this FLSA action on behalf of himself and all laborers, welders, and machine/equipment operators employed by Alpine during the last three years. One other former Alpine employee, Tyler Trupp ("Trupp"), has exercised his statutory right to join this lawsuit. Kelley and Trupp have each submitted a declaration in support of the motion for conditional certification. The declarations are virtually identical, with both men describing similar job responsibilities and overtime pay practices. The only notable difference between the two declarations is that Kelley claims he worked between 50–60 hours per week while Trupp contends that he typically worked between 72–80 hours per week.

Alpine opposes Kelly's request for conditional certification, claiming that Kelley—and every member of the putative class—was exempt from the FLSA's overtime requirements. Alpine further avers that Kelley's claims are not suitable or appropriate for collective treatment because a highly individualized analysis is required to determine whether the FLSA's overtime rules apply to the putative class members.

## LEGAL STANDARD

The FLSA requires employers to pay certain employees one and one-half times the employee's regular rate of pay for hours worked in excess of 40 hours per week. The FLSA further authorizes an employee to bring a "representative" or "collective action" against his employer for unpaid overtime wages on behalf of himself and other employees "similarly situated." 29 U.S.C. § 216(b). Unlike class actions in which

potential class members may choose to opt-out of the lawsuit, FLSA collective actions require potential class members to notify the court of their desire to opt-in to the action. *See id.* Although the FLSA does not expressly require certification for a collective action to proceed, certification has been recognized as a useful case management tool for district courts to employ in appropriate cases. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) ("A collective action allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity.").

The decision on whether to certify a suit as a collective action under the FLSA and approve notice to potential plaintiffs is committed to the sound discretion of the district court. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213 (5th Cir. 1995). Notice to potential plaintiffs will not issue unless a court conditionally certifies the case as a collective action. *See Shaw v. Jaguar Hydrostatic Testing, LLC*, No. 2:15-CV-363, 2017 WL 3866424, at *3 (S.D. Tex. Sept. 5, 2017) ("[T]he sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court. District courts have discretion in deciding whether to order notice to potential plaintiffs.") (internal quotation marks and citations omitted).

Although the FLSA authorizes a plaintiff to bring an action on behalf of similarly situated persons, the FLSA does not define "similarly situated." The Fifth Circuit has declined to adopt any specific test to determine when plaintiffs are similarly situated such

3

that the district court should certify a collective action and authorize notice. That being said, most district courts in the Southern District of Texas (including this one) have adopted the lenient two-step approach outlined in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987). *See Freeman v. Progress Residential Prop. Manager, LLC*, No. 3:16-CV-00356, 2018 WL 1609577, at *2 (S.D. Tex. Apr. 3, 2018).

The two stages of the *Lusardi* test are the "notice stage," followed by the "decertification stage." *Mooney*, 54 F.3d at 1213–14. At the notice stage, the court conducts an initial inquiry into "whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2010). Courts usually base this decision upon "the pleadings and any affidavits [that] have been submitted." *Mooney*, 54 F.3d at 1214. Because of the limited evidence available at this stage, "this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class." *Id.* (footnote omitted). At this initial "notice stage," a plaintiff must make a minimal showing that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; and (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted. *See Freeman*, 2018 WL 1609577, at *3. At no point during the notice stage of conditional certification should a court look to the merits of the lawsuit's allegations. *See Nieddu v. Lifetime Fitness, Inc.*, 977 F. Supp. 2d 686, 690 (S.D. Tex. 2013) ("Usually at the notice stage, because discovery has not yet occurred, courts do not review the underlying merits of the action in deciding whether to conditionally certify the

class."). If the court conditionally certifies the class, the court should provide notice to potential class members, allow time for the putative class members to opt-in, and allow adequate time for discovery. *See Mooney*, 54 F.3d at 1214.

The second stage of the *Lusardi* approach—the decertification stage—is triggered if a defendant files a motion for decertification after the opt-in period has concluded and discovery is largely complete. *See Mooney*, 54 F.3d at 1214. "At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." *Id.* If the plaintiffs are similarly situated, the district court allows the representative action to proceed to trial. *See id.* However, if the plaintiffs are not similarly situated, "the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice." *Id.* The original plaintiff then proceeds to trial on his individual claims. *See id.*

## CONDITIONAL CERTIFICATION IS PROPER

Although Kelley argues for several pages in his conditional certification papers that there is sufficient evidence in the record to show that Alpine has violated the overtime provisions of the FLSA, I need not enter that fray. At the notice stage "it is not appropriate to require the plaintiffs to produce evidence sufficient to survive summary judgment or to otherwise test the merits beyond the light burden of production to show potential class members are similarly situated." *McKnight v. D. Hous., Inc.*, 756 F. Supp. 2d 794, 804 (S.D. Tex. 2010).

"As noted above, a plaintiff seeking to obtain conditional certification must make a minimal showing that: (1) there is a reasonable basis for crediting the assertion that

5

aggrieved individuals exist; and (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted." *Freeman*, 2018 WL 1609577, at *4 (internal quotation marks, citation, ellipsis, and brackets omitted). I will evaluate the request for conditional certification in light of these two factors.

A.   **THERE IS A REASONABLE BASIS FOR CONCLUDING THAT OTHER AGGRIEVED INDIVIDUALS EXIST**

To satisfy the first element, Kelley "need only show that it is reasonable to believe that there are other aggrieved employees who were subject to an allegedly unlawful policy or plan." *Austin v. Onward, LLC*, 161 F. Supp. 3d 457, 464 (S.D. Tex. 2015) (quotation marks and citation omitted). This requirement is easily satisfied here. Both Kelley and Trupp have submitted declarations claiming that they worked in excess of 40 hours per week and were not paid overtime at one and one-half times their regular hourly rate. Moreover, Kelley and Trupp each state under oath that Alpine has not paid other welders and equipment operators for those hours they worked in excess of 40 per week at one and one-half times their rate of pay. Accordingly, the first element for conditional certification is met.

B.   **MEMBERS OF THE PROPOSED CLASS ARE SIMILARLY SITUATED**

At the notice stage, Kelley must also make a modest factual showing that he is similarly situated to the other employees named in the proposed class. This does not mean that their positions must be identical, as "the court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated [under the FLSA]." *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 996

(E.D. Tex. 2011) (quotation marks and citation omitted). *See also Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 534 (S.D. Tex. 2008) ("Plaintiffs must only be similarly—not identically—situated."). Rather, "the relevant inquiry is whether the potential class members performed the same basic tasks and were subject to the same pay practices." *Tice*, 826 F. Supp. 2d at 996. "[P]laintiff[s] need only show that their positions are similar to the potential plaintiffs." *Id.* at 995. Thus, I must determine whether the proposed class members "were together the victims of a single decision, policy, or plan." *Mooney*, 54 F.3d at 1214 n.8. As one court recently observed in summarizing the similarly situated standard: "[f]or the class representative to be considered similarly situated to the potential opt-in class members, the class representative must be similarly situated in terms of job requirements and similarly situated in terms of payment provisions." *Keeton v. Found. Energy Mgmt., LLC*, No. 3:18-CV-01876-G, 2020 WL 487498, at *3 (N.D. Tex. Jan. 30, 2020).

In this case, Kelley seeks conditional certification of a class comprised of all laborers, welders, and machine/equipment operators employed by Alpine during the last three years. Kelley asserts that he and the other proposed class members are similarly situated because "Alpine paid its employees, including welders and machine/equipment operators, straight time for overtime even though they normally worked more than forty (40) hours per week in violation of [the FLSA]." Dkt. 17 at 14. Considering the fairly lenient burden imposed at the first stage of conditional certification, these allegations, which are supported by the declarations of Kelley and Trupp, appear to demonstrate that Kelley is similarly situated to the proposed class.

7

In response, Alpine contends that Kelley and potential class members are not similarly situated because an individualized inquiry is required to determine which individuals may be exempt from FLSA protection under the Motor Carrier Act ("MCA"). To fully understand Alpine's position, I need to briefly explain the applicable MCA provision and its impact on this case. The MCA exemption provides that employees subject to Secretary of Transportation standards are exempt from the FLSA's overtime requirements. *See* 29 U.S.C. § 213(b)(1). "[T]he purpose of the MCA exemption was primarily to ensure that operators of vehicles affecting highway safety were regulated by an entity with a greater understanding of the particular safety concerns." *Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575, 579 (5th Cir. 2018). Although Kelley's lawsuit and his motion for conditional class certification mention nary a word about the MCA, it is Alpine's position that "every member" of the proposed class is exempt from the FLSA's overtime requirements by virtue of the MCA exemption. Dkt. 24 at 7. This is because, according to Alpine, the regular job duties of the proposed class members "affect the safe operation of the vehicles they use," subjecting them to Department of Transportation rules for the transportation of goods. *Id.* at 9. As a side note, there is a so-called "small vehicle exception," which provides that employees who would otherwise fall under the MCA exemption nonetheless benefit from the FLSA if their duties occur on vehicles weighing 10,000 pounds or less. *See Carley*, 890 F.3d at 579. Alpine contends that to determine whether the "small vehicle exception" applies to the putative class will require "individualized inquiries . . . that will obliterate the theory of judicial economy." Dkt. 24 at 7.

I find Alpine's arguments unavailing. At this notice stage, it is inappropriate to conduct the factual inquiry necessary to assess the validity of merits-based defenses. This is not a novel legal proposition that I am creating out of whole cloth. "[E]xemptions are merits-based defenses to FLSA claims that courts in this district typically hold to be irrelevant at this initial, notice stage of the case." *Jones v. Cretic Energy Servs., LLC*, 149 F. Supp. 3d 761, 774 (S.D. Tex. 2015). *See also In re Wells Fargo Wage & Hour Emp. Prac. Litig. (No. III)*, 2012 WL 3308880, at *28 (S.D. Tex. Aug. 10, 2012) (noting that courts within the "Southern District of Texas . . . have determined that exemptions are merit-based and not relevant at the notice stage"); *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008) ("[T]he possible applicability of one or more [FLSA exemptions] cannot defeat conditional certification."). The reasoning behind this practice is sound. A careful evaluation of merits-based defenses goes beyond the scope of this initial, notice stage of the conditional certification process, and is best reserved for the decertification stage, after discovery has occurred and the district court is able to examine all the evidence more fully. *See Snively v. Peak Pressure Control, LLC*, 174 F. Supp. 3d 953, 960 (W.D. Tex. 2016) ("[T]he various defenses available to Defendants, which appear to be individual to each plaintiff, are more appropriately considered at the second stage of the *Lusardi* inquiry."); *Turner v. Nine Energy Serv., LLC*, No. H-15-3670, 2016 WL 6638849, at *7 (S.D. Tex. Oct. 14, 2016) ("Exemption defenses are considered by courts in the second stage of the *Lusardi* analysis, not the notice stage."). Accordingly, the possible applicability of an FLSA exemption, such as the MCA exemption, does not defeat conditional certification.

Tellingly, Alpine cannot point to a single case in which a district court refused to grant conditional certification at the notice stage out of a concern that the MCA exemption or small-vehicle exception would require individualized assessments. The need for individual assessments simply does not automatically defeat conditional certification at the notice stage. Indeed, there are a number of cases specifically finding that MCA exemption and small-vehicle exception cases are appropriate for conditional certification. *See Myers v. Loomis Armored US, LLC*, No. 3:18-cv-00532-FDW-DSC, 2019 WL 3338172, at *4 (W.D. N.C. July 25, 2019) ("The fact that plaintiffs might be exempt from the FLSA due to the [MCA], and that the application of the MCA exemption might require an individualized inquiry, does not preclude conditional certification."); *Gomez v. Loomis Armored US, LLC*, No. SA-16-CA-00931-DAE, 2017 WL 2999422, at *5 (W.D. Tex. Apr. 3, 2017) ("The facts that plaintiffs might be exempt from the FLSA due to the MCA . . . and that application of the MCA exemption requires a week-by-week analysis do not preclude conditional certification."); *Turner,* 2016 WL 6638849, at *7 (rejecting argument that the MCA exemption creates "highly individualized, fact-intensive inquiry" which makes conditional certification improper); *Ramos v. Capitan Corp.*, No. MO:16–CV–00075–RAJ, 2016 WL 8674617, *3 (W.D. Tex. May 18, 2016) ("[T]he various defenses available to Defendant [including the MCA exemption], which appear to be individual to each plaintiff, are more appropriately considered at the second stage of the *Lusardi* inquiry."); *Albanil v. Coast 2 Coast,* Inc., No, H-08-486, 2008 WL 4937565, at *7 (S.D. Tex. Nov. 17, 2008) ("The application of the Motor Carrier Act exemption goes to the merits of whether the chippers are exempt

from overtime pay. Thus, defendants' assertion of an exemption, alone, is an insufficient basis for denying conditional certification and notice."). Recognizing that the hurdle is not high at the notice stage, it is my opinion that Kelley has satisfied his burden of showing that there is a class of similarly situated employees entitled to receive notice. *See Mooney*, 54 F.3d at 1214.

Before concluding my analysis of the conditional certification issue, I want to emphasize that my decision to conditionally certify a collective action at this notice stage does not prevent Alpine from raising the same arguments advanced here later at the decertification stage. As a result of my ruling today, notice will be sent to class members and both parties will have the opportunity to conduct discovery. If, after discovery, Alpine can show that an individualized inquiry is in fact warranted, it will have the opportunity at stage two of *Lusardi* to move to "decertify" the collective action. Final certification at that stage will entail greater scrutiny than I have given here.

### FORM OF NOTICE TO POTENTIAL CLASS MEMBERS

Federal judges have the power to authorize the sending of notice to potential FLSA class members to inform them of the action and to give them the opportunity to participate by opting in. *See Hoffmann-La Roche Inc.*, 493 U.S. at 169–70. "Notice is particularly important for FLSA collective actions as potential plaintiffs' statutes of limitations continue to run unless and until a plaintiff 'gives his consent in writing to become a party and such consent is filed in the court in which such action is brought.'" *Gronefeld v. Integrated Prod. Servs., Inc.*, No. 5:16-CV-55, 2016 WL 8673851, at *5 (W.D. Tex. Apr. 26, 2016) (quoting 29 U.S.C. § 216(b)).

11

Alpine raises several objections to Kelley's proposed notice to potential class members. Specifically, Alpine contends that (1) notice should not be sent to potential plaintiffs by email; (2) no reminder notice should be sent to potential plaintiffs; and (3) the wording in the proposed notice is flawed.

A.   **NOTICE MAY BE SENT TO POTENTIAL CLASS MEMBERS BY EMAIL**

Kelley has requested that I permit notice to be sent to potential class members by both first-class mail and email. Alpine objects to the request to send notice by email, arguing that sending notice by mail alone is sufficient to ensure that potential plaintiffs receive notice of this case. In *Wade v. Furmanite America, Inc.*, I considered whether notice should be sent to potential class members by email in addition to first-class mail. *See* No. 3:17-CV-00169, 2018 WL 2088011, at *6 (S.D. Tex. May 4, 2018). In analyzing the issue, I began by noting that "the purpose of notice is to inform potential class members of the lawsuit and provide them the opportunity to join the case, [and I] will encourage all efforts aimed at ensuring that potential plaintiffs discover that this action is pending." *Id.* at *7. After acknowledging that "millions of Americans rely on email as their primary method for communication," I ultimately allowed notice to be distributed by both email and first-class mail. *Id.* I explained that "[u]tilizing two means of delivery—first-class mail and email—is more likely to result in potential plaintiffs receiving notice of the lawsuit than by a single delivery method." *Id.*

B.  **REMINDER NOTICE IS APPROPRIATE**

Next, Alpine objects to Kelley's request to send a reminder notice to potential class members. Alpine maintains that reminder notice is "unnecessary and inappropriate because [it goes] beyond what is necessary to effectuate notice." Dkt. 24 at 20.

I recently addressed, for the first time, whether a reminder notice is appropriate in collective action cases. *See Dickensheets v. Arc Marine, LLC*, ___ F. Supp. 3d ___, 2020 WL 855172, at *2 (S.D. Tex. Feb. 19, 2020). Admittedly, there is a split of authority on whether reminder notices should be utilized. In approving the use of reminder notices, I noted:

> To me, the benefits to be gained by sending a reminder notice far outweigh any potential disadvantages. A reminder notice provides a second chance to potential plaintiffs who, for whatever reason, do not receive, open, or view the initial letter, email, or text message providing notice. A reminder notice also helps ensure that those potential plaintiffs, who read the original notice but forget about it in the hustle and bustle of daily life, are reminded at least once about their opportunity to join the lawsuit. Defendants' concern, that a reminder notice can give an inaccurate impression that the Court actively promotes participation in the collective action, can be easily solved. The class notice can simply include language expressly stating that the Court does not encourage or discourage participation in the case. . . . I find that a reminder notice is a reasonable way to see that potential class members receive notice of the action and have a chance to decide whether to participate in the case. I see no downside to a reminder notice as Defendants will not be unduly burdened or prejudiced.

*Id.*

The purpose of class notice is to ensure that potential plaintiffs "receiv[e] accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." *Hoffmann-La Roche Inc.*, 493 U.S. at

170. I, therefore, conclude that reminder notices are an appropriate method to ensure the potential plaintiffs are made fully aware of the collective action lawsuit.

**D.    WORDING OF NOTICE**

Finally, Alpine makes two objections to the wording in the proposed notice. First, Alpine claims the proposed notice fails to advise putative class members of their discovery obligations. Second, Alpine argues that the proposed notice fails to advise class members of their right to choose their own counsel to represent them in this case. I think both of these complaints are valid. The parties are, thus, ordered to include such language in the notice to be sent to potential plaintiffs. As an aside, I have prepared a form FLSA conditional certification notice that contains satisfactory language on both these points. The form FLSA notice is available on my website (https://www.txs.uscourts.gov/page/united-states-magistrate-judge-andrew-m-edison), and the parties are encouraged to utilize it in drafting the final notice for this case.

## CONCLUSION

Kelley has made a sufficient showing at this preliminary stage to warrant the issuance of notice, to permit full discovery, and to allow the Court to conduct a more rigorous analysis at the final decertification stage when it has the benefit of more information. As such, Plaintiff's Opposed Motion for Class Certification and Expedited Discovery (Dkt. 17) is **GRANTED**. Conditional certification is granted for a class defined as follows:

> All laborers, welders, and machine/equipment operators employed by Alpine at any time during the three-year period before this order, March 31, 2017, through March 31, 2020.

I order the parties to confer and file an agreed Proposed Notice and an agreed Proposed Consent to Join form by April 9, 2020. Alpine shall provide Kelley with a list of all employees fitting the description of the conditionally certified class in a usable electronic format by April 15, 2020. This list shall include each individual's full name, last known mailing address, e-mail address (if known), telephone number, and date(s) of employment. Kelley shall have fourteen (14) days from the receipt of this information to send notice to the potential class members by first-class mail and email. The opt-in period shall be sixty (60) days from the date the notice is sent. A reminder notice may also be sent to potential class members by email, first-class mail, or both.

    SIGNED in Houston, Texas on this 31st day of March, 2020.

                                              ANDREW M. EDISON
                                  UNITED STATES MAGISTRATE JUDGE