United States District Court
Southern District of Texas

**ENTERED**

February 01, 2023

Nathan Ochsner, Clerk

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **BEAU KELLEY, Individually and On Behalf of All Others Similarly Situated,** | § § § | |
| **Plaintiff,** | § § | |
| **vs.** | § § | **CIVIL ACTION NO. 4:19-CV-01152** |
| **ALPINE SITE SERVICES, INC.,** | § § § | |
| **Defendant.** | § § | |

## FINDINGS OF FACT & CONCLUSIONS OF LAW

This case was tried by consent of the parties in a bench trial before the Court. Plaintiff Beau Kelley, individually and on behalf of all others similarly situated, and Defendant Alpine Site Services, Inc. ("Alpine") appeared by and through their counsel of record. The Court, having carefully considered the evidence admitted at trial and the stipulations made on the record during the trial, now makes the following findings of fact and conclusions of law. *See* FED. R. CIV. P. 52. Any conclusion of law more properly characterized as a finding of fact is adopted as such, and any finding of fact more properly characterized as a conclusion of law is adopted as such.

1

## FINDINGS OF FACT

**Defendant Alpine Site Services, Inc.**

1.      This action arises under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219.  Plaintiff Beau Kelley, individually and on behalf of all others similarly situated, has brought this action against his former employer Alpine seeking damages for his unpaid overtime work.

2.      Alpine transports and installs engineered screwpiles, a foundation pile system used in construction applications.

3.      The screwpiles Alpine transports and installs are manufactured in yards located in Commerce City, Colorado, and Edna, Texas. Once manufactured, the screwpiles, along with other construction equipment and materials, are loaded onto 45-foot flat-deck trailers and transported by Alpine to Alpine's jobsites across the country.

4.      At the jobsites, Alpine's employees install the engineered screwpiles into the ground using heavy machinery. Once a screwpile is installed, it is cut off to the proper elevation and a pier cap or cap plate is welded on the top of the screwpile.

5.      The excess screwpile, which is called "cutoff," is then loaded and secured by Alpine's employees back onto the flatbed trailers to be transported back to the yards in Colorado or Texas.

6.      Alpine's employees also load and secure items such as extra cap plates and other tools, equipment, and machinery onto trailers for transport to other jobsites or back to the yards in Colorado or Texas.

7.      Alpine's employees also load and secure load test equipment onto trailers for transport to other jobsites or back to the yards in Colorado or Texas.

8.      The flatbed trailers used to haul cutoff weigh more than 10,001 pounds, per gross vehicle weight ratings ("GVWRs").

**Plaintiffs' Job Duties for Alpine**

9.      Plaintiff Beau Kelley and the other opt-in Plaintiffs (collectively, "Plaintiffs") worked for Alpine for varying periods during the three years preceding the filing of the original Complaint in this matter.

10.     Plaintiffs held job titles including laborer, welder, and construction team member.

11.     Plaintiffs worked for Alpine at its jobsites across the country, including in Louisiana, Mississippi, New Jersey, New Mexico, New York, Ohio, Oklahoma, Pennsylvania, Florida, and Wyoming.

12.     At the jobsites, Plaintiffs worked on teams that were responsible for installing engineered screwpiles into the ground using heaving machinery.

13.     Plaintiffs, as part of their job duties, were expected to and did in fact load cutoff, excess cap plates, as well as other tools and equipment at the jobsite, onto flatbed trailers weighing more than 10,001 GVWR for transport back to the yards in Colorado and Texas.

14.     These loaded trailers traveled in interstate commerce on interstate highways.

15.     Plaintiffs received training related to loading and securing in the course of their work with Alpine.

16.     In October 2018, Alpine removed all vehicles with GVWR of 10,000 pounds or fewer from service on its jobsites.

17.     Plaintiffs did not perform Motor Carrier Act ("MCA")-covered duties with vehicles with GVWR of 10,000 pounds or fewer.

**Alpine's Classification of Plaintiffs**

18.     Alpine classified Plaintiffs as exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA") under the MCA exemption and paid them straight time for all hours worked over 40 in a workweek.

19.     Alpine fully discloses to its employees their classification status in its job postings, in the interview process, and on its new hire paperwork.

20.     Plaintiffs who worked on the Ramapo job site in New Jersey were paid overtime at a rate of time and a half their regular rate of pay for all hours over 40 each workweek they worked on that job.

21.     The U.S. Department of Labor ("DOL") audited Alpine in 2009. The DOL found that employees holding Plaintiffs' job titles were properly classified as exempt. The DOL also found several employees holding Plaintiffs' job titles were entitled to overtime based on a lack of documentation that would support a conclusion that those workers performed exempt duties.

22.     After the 2009 audit, Alpine created a form titled "Employee Work Report" in order to document Alpine's compliance with the requirements of the MCA exemption with respect to employees holding Plaintiffs' positions.

23.     The DOL audited Alpine in 2010 and no violations were found. Alpine classified Plaintiffs' positions as exempt from overtime at that time.

24.     The DOL audited Alpine in 2014 and no violations were found. Alpine classified Plaintiffs' positions as exempt from overtime at the time of that audit.

25.     Alpine continues to monitor its compliance with the FLSA.

## CONCLUSIONS OF LAW

### FLSA Coverage

26.     The FLSA requires employers to pay non-exempt employees 1.5 times the employees' regular rate of pay for all hours worked over 40 in a workweek. 29 U.S.C. § 207(a)(1).

27.     Alpine is an "employer" of Plaintiffs for purposes of the FLSA.

### MCA Exemption

28.     The MCA exemption to the FLSA applies to employees of motor private carriers who perform safety-affecting duties on vehicles with GVWRs of more than 10,001 pounds that travel in interstate commerce. 29 U.S.C. § 213(b)(1); 29 C.F.R. § 782.2.

29.     "As a general rule, if the bona fide duties of the job performed by the employee are in fact such that he is [] or is . . . likely to be [] called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities . . . he comes within the exemption in all workweeks when he is employed at such job." 29 C.F.R. § 782.2(b)(3). "Where this is the case, the rule applies regardless of the proportion of the employee's time or his activities which is actually devoted to such safety-affecting work in the particular workweek, and the exemption will be applicable even in a

5

workweek when the employee happens to perform no work directly affecting 'safety of operation.'" *Id.*

30.     It is well settled that it is the character of the activities, rather than the proportion of the employee's time or activities that determines the jurisdiction of the Secretary under the MCA. *Barefoot v. Mid-Am. Dairymen, Inc.*, 16 F.3d 1216, 1994 WL 57686, at *3 (5th Cir. 1994). An individual employee need not actually or consistently engage in duties affecting the safety of interstate activities. *Songer v. Dillon Res., Inc.*, 618 F.3d 467, 475–76 (5th Cir. 2010) (finding reasonable expectation of engaging in interstate commerce existed, although four plaintiffs never drove interstate, and just 2.75 percent of the employer's loads were transported across state lines).

31.     The exemption typically applies to four classes of employees — (1) drivers, (2) driver's helpers, (3) loaders, and (4) mechanics — if their work directly affects the safety of the operation of motor vehicles in transportation in interstate commerce. 29 C.F.R. § 782.2(b)(1). In this case Alpine asserts that Plaintiffs were employed in positions affecting transportation safety because in addition to their other duties they were employed as loaders.  Thus, the exemption applies only if each Plaintiff's work (1) could be defined as that of a "loader," and (2) directly affected the safety of operation of motor vehicles in interstate commerce within the meaning of the MCA. 29 C.F.R. § 782.5(b).

32.     For purposes of the MCA exemption a "loader" is an employee of a carrier "whose duties include, among other things, the proper loading of his employer's motor vehicles so that they may be safely operated on the highways of the country." 29 C.F.R. § 782.5(a). A loader's duties "will usually also include unloading and the transfer of freight

between the vehicles and the warehouse, but he engages, as a "loader," in work directly affecting "safety of operation" so long as he has responsibility when such motor vehicles are being loaded, for exercising judgment and discretion in planning and building a balanced load or in placing, distributing, or securing the pieces of freight in such a manner that the safe operation of the vehicles on the highways in interstate . . . commerce will not be jeopardized." *Id*.; *see also Wirtz v. C & P Shoe Corp*., 336 F.2d 21, 29 (5th Cir. 1964) ("[A loader] share[s] in the exercise of discretion as to the manner in which the loading [is] done."). An employee need not devote all or even the majority of his time to safety-affecting activities to qualify as a loader. Levinson, 67 S. Ct. at 944. Instead, "it is enough that a loader devote a substantial part of his time to activities affecting the safety of operation." *Id*. at 947.

33.    Alpine bears the burden of establishing that the MCA exemption applies to Plaintiffs by a preponderance of the evidence. *Olibas v. Barclay*, 838 F.3d 442, 448 (5th Cir. 2016); *Edwards v. 4JLJ, LLC*, Civil Action No. 2:15-CV-299, Doc. 311 at p. 2 (S.D. Tex. Feb. 25, 2019).

34.    Alpine is and has been at all relevant times a "motor private carrier" for purposes of the MCA exemption. 49 U.S.C. § 13102(15); 49 C.F.R. § 390.5.

35.    Plaintiffs, as part of their job duties, were expected to and did in fact load cutoff, excess cap plates, as well as other tools and equipment at the jobsite, onto flatbed trailers weighing more than 10,001 GVWR for transport back to the yards in Colorado and Texas. These job duties were not so trivial, casual, or occasional as to not affect the safety of Alpine's operations. *Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 67 S. Ct.

954, 960, 91 L. Ed. 1184 ("[T]he mere handling of freight at a terminal, before or after loading, or even the placing of certain articles of freight on a motor carrier truck may form so trivial, casual or occasional part of an employee's activities, or his activities may relate only to such articles or to such limited handling of them, that his activities will not come within the kind of 'loading' which . . . affects safety of operation.").

36.     Plaintiffs did not merely furnish physical assistance to other employees in loading the trailers. Plaintiffs shared in the exercise of discretion regarding loading the trailers and their loading duties had a significant effect on the safety of vehicles in interstate transportation such that improper loading or securing could cause catastrophic damage to the flatbed trailer, the tractor, the driver, other vehicles on the road, and the general public.

37.     Alpine's burden of proof regarding covered duties for the MCA exemption is not measured weekly. Plaintiff and Opt-In Plaintiffs were or could be called upon in the ordinary course of their work to perform, either regularly or from time-to-time, safety-affecting activities. As such, Plaintiffs come within the MCA exemption in all workweeks they were employed by Alpine. 29 C.F.R. § 782.2(b)(3).

38.     The MCA exemption applies to Plaintiffs. Plaintiffs were properly classified as exempt pursuant to the MCA exemption.

**Small Vehicle Exception**

39.     The small vehicle exception to the MCA exemption applies if Plaintiffs performed safety-affecting duties on vehicles with GVWRs of fewer than 10,000 pounds. SAFETEA-LU Technical Corrections Act of 2008, Pub. L. No. 110–244, § 306(a), (c), 122 Stat. 1572, 1621 (June 6, 2008).

40.     Plaintiffs bear the burden of showing the small vehicle exception applies. *Carley v. Crest Pumping Techs., L.L.C.*, 890 F.3d 575, 580 (5th Cir. 2018); *Rychorcewicz v. Welltec, Inc.*, 768 F. App'x 252, 256 (5th Cir. 2019) (per curiam).

41.     The small vehicle exception must be established on a workweek-by-workweek basis. *Cooper v. Noble Casing, Inc.*, No. 15-CV-1907-WJM-CBS, 2016 WL 6525740, at *4–5 (D. Colo. Nov. 3, 2016).

42.     If the small vehicle exception applies to Plaintiffs, they are entitled to 1.5 times their regular rate for hours worked over 40 in a workweek, for only those workweeks in which Plaintiffs prove they performed covered small-vehicle work.

43.     Plaintiffs did not establish that they performed any qualifying small vehicle work in any workweek during the relevant limitations period.

44.     Because the MCA exemption applies to Plaintiffs and the small vehicle exception does not, Plaintiffs are not entitled to 1.5 times their regular rate for hours worked over 40 in a workweek.

45.     Plaintiffs are not entitled to any recovery of damages with respect to their claims for overtime pay under the FSLA and Alpine is entitled to judgment in this action.

        SIGNED at Houston, Texas on February 1, 2023.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE